UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WILLIAM P. SADULSKY and<br>SANDRA SADULSKY,<br><br>       *Plaintiffs*<br>**v.**<br><br>HALEY L. FLEMING,<br><br>       *Defendant* | )<br>)<br>)<br>)<br>)   No. 1:14-cv-01-JHR<br>)<br>)<br>)<br>) |

### *MEMORANDUM DECISION AND ORDER ON MOTIONS* IN LIMINE

In this action alleging that the defendant, Winslow police officer Haley L. Fleming, used excessive force against plaintiff William P. Sadulsky and negligently caused plaintiff Sandra Sadulsky emotional distress, Fleming has filed three motions *in limine* (i) to preclude the plaintiffs from introducing evidence of Taser manufacturer recommendations, (ii) to bar testimony of witnesses not present during the incident at issue, and (iii) to preclude certain testimony of the plaintiffs' expert, Melvin Tucker. *See* Defendant's Motion *in Limine* To Preclude Plaintiffs From Introducing Evidence of Taser Manufacturer's Recommendations ("Taser Motion") (ECF No. 85); Defendant's Motion *in Limine* To Preclude Testimony From Plaintiffs' Witnesses Not Present at Incident ("Witness Motion") (ECF No. 86); Defendant's Motion *in Limine* To Exclude Certain Expert Testimony of Melvin Tucker ("Expert Motion") (ECF No. 87).

For the reasons that follow, the Taser Motion is denied; the Witness Motion is mooted in part as to one witness, former Chief Jeffrey P. Fenlason, granted in part to the extent that the remaining five witnesses are permitted to testify solely for purposes of impeachment, and otherwise denied; and the Expert Motion is granted in part with respect to any testimony defining

the term "consensual encounter," expressing an opinion that Fleming's interaction with the plaintiffs constituted such an encounter, or offering an opinion that Fleming's use of force was unreasonable, and otherwise denied. To the extent I have denied the motions, my denial is without prejudice to Fleming's interposition of objections at trial consistent with this order.

## I. Discussion

### A. Taser Motion

Fleming seeks to preclude the plaintiffs from introducing evidence of the Taser manufacturer's training or certification recommendations or requirements on the bases that that evidence is irrelevant, unduly prejudicial, and could confuse the jury. *See* Taser Motion at [2]-[4]. On the showing made, the motion is denied.

Fleming reasons that, because this court ruled on summary judgment that the Town of Winslow ("Town") was not liable on a failure-to-train theory pursuant to 42 U.S.C. § 1983 or the Maine Civil Rights Act despite the Town's failure to require annual training in Taser usage as recommended by the manufacturer, evidence regarding the manufacturer's recommendations or requirements is irrelevant as to his conduct. *See id.* at [2]-[3]. However, it is a separate question whether Fleming is liable for his alleged use of excessive force against plaintiff William Sadulsky, and the court did not rule that the manufacturer evidence was irrelevant as to any defendant. *See* Recommended Decision on Motion for Partial Summary Judgment ("Summary Judgment Ruling") (ECF No. 55) at 18-19; Order Affirming the Recommended Decision of the Magistrate Judge (ECF No. 58). While, as Fleming points out, *see* Taser Motion at [2], the court noted that the State of Maine does not require annual Taser training, *see* Summary Judgment Ruling at 19, that goes to the weight, rather than the admissibility, of the Taser manufacturer evidence.

To the extent that Fleming seeks preclusion of the Taser manufacturer evidence on the basis that, pursuant to Federal Rule of Evidence 403, any probative value is outweighed by the danger of unfair prejudice to him and/or confusion of the jury, *see* Taser Motion at [3]-[4], I decline to bar the evidence on that ground in advance of trial. Fleming is free to raise the objections that are the subject of this motion (both relevance and Rule 403) if and when any Taser manufacturer evidence is offered at trial, at which time I will rule on its admissibility in the trial context.

### B. Witness Motion

Fleming seeks to preclude the testimony of six witnesses not present at the time of the incident at issue on the bases that their testimony would be irrelevant, unduly prejudicial, and/or confusing to the jury and that the plaintiffs failed to include them in their initial disclosures, instead disclosing them for the first time in their final pretrial memorandum, well past the close of discovery. *See* Witness Motion at [1]-[4]. The motion is mooted in part, as to former Chief Fenlason, by the plaintiffs' representation that he will not be called. *See* Plaintiffs' Response to Defendant's Motion To Preclude Testimony From Plaintiffs' Witnesses Not Present at Incident ("Witness Response") (ECF No. 97) at 3. I otherwise grant the motion in part, to the extent that, in view of the plaintiffs' failure to timely disclose these witnesses, they shall be permitted to call the remaining five solely for impeachment purposes. *See* Fed. R. Civ. P. 26(a)(1)(A)(i).[1] I decline to bar testimony of these witnesses in advance of trial on the bases that it is irrelevant, unduly prejudicial, and/or confusing to the jury. Fleming is free to raise any such objections if and when

---

[1] The plaintiffs argue that the active participation of Winslow Town Manager Michael Heavener in this case, which included answering interrogatories on behalf of the Town, "should have cued the [d]efendant that he would be a potential witness." Witness Response at 3. The plaintiffs fail to explain how Heavener's work on behalf of the Town, which has been terminated as a party, should have put Fleming, the remaining defendant, on notice that the plaintiffs intended to call Heavener as a witness with respect to Fleming's conduct.

the impeachment evidence is offered at trial, at which time I will rule on its admissibility in the context of trial.²

### C. Expert Motion

Lastly, Fleming seeks pursuant to Federal Rule of Evidence 702 to exclude two categories of expected testimony by Tucker: (i) testimony regarding alleged violations of the Town's electronic weapons control ("EWC") policy and Maine Criminal Justice Academy ("MCJA") standards, on the basis that Tucker lacks sufficient foundation to testify as to those matters, and (ii) testimony regarding the "consensual encounter" and the unreasonableness of the use of force pursuant to the Fourth Amendment, on the basis that it would constitute inadmissible instruction on the law. *See* Expert Motion at [2]-[6].

I decline to exclude the EWC and MCJA testimony for lack of adequate foundation. "When the adequacy of the foundation for . . . expert testimony is at issue, the law favors vigorous cross-examination over exclusion." *Zuckerman v. Coastal Camps, Inc.,* 716 F. Supp.2d 23, 28 (D. Me. 2010) (citation and internal quotation marks omitted). "If the factual underpinnings of the expert's opinions are in fact weak, that is a matter affecting the weight and credibility of [the expert's] testimony." *Id*. (citation and internal punctuation omitted). "It is only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury that such testimony must be excluded on foundational grounds." *Id*.

Tucker's *curriculum vitae* indicates that he was an adjunct professor of criminal justice at the University of Maine at Augusta from 2000 to 2004 and has provided criminal justice training

---

² The plaintiffs' description of the witnesses' expected testimony indicates that it would bear largely, if not entirely, on Fleming's motive on the day in question. *See* Witness Response at 2-3. At least as concerns the question of whether Fleming used excessive force, his motives are irrelevant. *See, e.g., Raiche v. Pietroski*, 623 F.3d 30, 36 (1st Cir. 2010) ("We analyze excessive force claims according to the constitutional touchstone of objective reasonableness, so we do not consider an officer's subjective intent or motivation.") (citations and internal quotation marks omitted).

at the MCJA.  *See* Appx. A (commencing on page 11 of ECF No. 49-2) to Affidavit of Melvin L. Tucker ("Tucker Aff.") (commencing on page 6 of ECF No. 49-2), attached to Plaintiff[s'] Response to Defendants' Statement of Material Facts ("Plaintiffs' Opposing SMF") (ECF No. 49-1), attached to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment ("Opposition") (ECF No. 49), Page ID ## 515, 520-21.  This is a sufficient foundation to withstand the exclusion of testimony regarding the MCJA.

Fleming proffers two additional bases for excluding the MCJA-related testimony, neither of which I find persuasive.  First, he argues that the testimony should be excluded because Tucker indicated in his report that a former defendant, Michael Michaud, stood William Sadulsky up after handcuffing him in a manner that violated MCJA training standards.  *See* Expert Motion at [4]-[5]; Expert Report of Melvin L. Tucker ("Tucker Report") (ECF No. 35-2), attached to [Additional Attachments] (ECF No. 35), at 9.  The plaintiffs respond that Tucker will correct his report, either through a revision or testimony, to reflect his current understanding that Fleming, rather than Michaud, engaged in this conduct.  *See* Plaintiff's Response to Defendant's Motion To Exclude Certain Expert Testimony of Melvin Tucker ("Expert Response") (ECF No. 95) at 6.  I agree with the plaintiffs, *see id.*, that Tucker's revision goes to the weight of his opinion, not its admissibility, and can be addressed through cross-examination.

Second, Fleming asserts that Tucker's testimony about the standards taught at the MCJA is necessarily hearsay because Tucker has not taken or taught a class at the MCJA related to the mechanics of arrest and has merely reviewed written materials.  *See* Expert Motion at [5].  As the plaintiffs rejoin, *see* Expert Response at 5-6, an expert "may base an opinion on facts or data in the case that the expert has been made aware of[,]" and such facts or data need not be admissible for an opinion to be admitted "[i]f experts in the particular field would reasonably rely on those

5

kinds of facts or data in forming an opinion on the subject," Fed. R. Evid. 703. Presumably, training standards set forth by a state's criminal justice academy are the kinds of facts or data on which an expert in this field would reasonably rely in forming an opinion, and Fleming identifies no reason why they would not be.

Turning to Fleming's argument that Tucker's testimony as to the EWC lacks sufficient foundation, I reach the same conclusion as I did with respect to the MCJA testimony. Tucker's review of the Town's EWC policy, together with his experience, education, and training in law enforcement, including the use of electronic weapons, *see* Tucker Aff. ¶ 3; Tucker Report at 2, provide a sufficient foundation to withstand the exclusion of testimony regarding the EWC.

Fleming offers one additional basis for excluding Tucker's testimony regarding the ECW: that, pursuant to Federal Rule of Evidence 403, any probative value would be outweighed by the danger of undue prejudice to him and/or confusion of the jury, which could be misled to believe that any violation of Town policy is necessarily a constitutional violation. *See* Expert Motion at [3]-[4]. I decline to bar Tucker's testimony regarding the ECW on this basis in advance of trial; however, Fleming is free to renew this objection if and when such evidence is offered at trial, at which time I will rule on its admissibility in the context of trial.

Fleming finally seeks to bar certain testimony on the basis that it consists of nothing more than legal conclusions. *See id*. at [5]-[6]. I agree that Tucker should not be permitted to define the term "consensual encounter" or testify that Fleming's interaction with the plaintiffs constituted such an encounter, Tucker Report at 4, which would invade the province of the court, *see, e.g., Nieves-Villanueva v. Soto-Rivera,* 133 F.3d 92, 100 (1st Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.") (citation and internal quotation marks omitted), or testify that

6

Fleming's use of force was unreasonable, *see* Tucker Report at 5, which would invade the province of the jury, *see, e.g, M.H. v. County of Alameda*, Case No. 11-cv-02868-JST, 2015 WL 54400, at *2 (N.D. Cal. Jan. 2, 2015) ("Despite the fact that [Federal] Rule [of Evidence] 704 generally permits expert testimony embracing an ultimate issue, courts preclude expert testimony as to what is reasonable, in the context of whether excessive force was employed[,]" which would "invad[e] the province of the jury.") (citations and internal punctuation omitted); *Burger v. Mays*, 176 F.R.D. 153, 156-57 (E.D. Pa. 1997) (same); *see also, e.g., Hutchison v. Cutliffe*, Civil No. 04-77-B-W, 2004 WL 5524566, at *2 (D. Me. Nov. 10, 2004) (barring expert from testifying about "the ultimate reasonableness of the degree of force applied" because, "once a jury decides which set of facts it believes, it will be within their ability as lay persons to decide whether the use of force was reasonable or not") (citation and internal quotation marks omitted).

However, to the extent that Fleming seeks a broader ban in advance of trial on testimony regarding those subject matters, his motion is denied. *See, e.g., M.H.*, 2015 WL 54400, at *2 ("[T]he cases also consistently hold that while an expert cannot testify as to . . . 'objective reasonableness' using th[at] specific term[], . . . they may opine as to . . . generally accepted law enforcement standards, custom, or practice.  Thus, experts on both sides may testify as to appropriate standards of care – which go to the ultimate issue[] of . . . what conduct is 'objectively reasonable' – so long as they do not use th[at] 'judicially defined' and 'legally specialized' term[].") (citations omitted).  Fleming is free to object at trial to any testimony of Tucker that he believes invades the province of either the court or the jury, at which time I will rule on its admissibility.

7

## II.     Conclusion

For the foregoing reasons, the Taser Motion is ***DENIED***; the Witness Motion is ***MOOTED*** in part as to witness Fenlason, ***GRANTED*** in part to the extent that the remaining five witnesses are permitted to testify solely for purposes of impeachment, and otherwise ***DENIED***; and the Expert Motion is ***GRANTED*** in part with respect to any testimony defining the term "consensual encounter," expressing the opinion that Fleming's interaction with the plaintiffs constituted such an encounter, or offering the opinion that Fleming's use of force was unreasonable, and otherwise ***DENIED***.  To the extent I have denied the motions, my denial is without prejudice to the interposition of objection(s) at trial within the parameters outlined above in my discussion of the individual motions.

Dated this 4th day of March, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge